616 N.E.2d 793 (1993)
STATE of Indiana, Appellant-Plaintiff,
v.
Loretta J. CAPLINGER, Appellee-Defendant.
No. 29A02-9302-CR-84.
Court of Appeals of Indiana, Second District.
July 15, 1993.
Pamela Carter, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellant-plaintiff.
Stephen W. Cook, Noblesville, for appellee-defendant.
FRIEDLANDER, Judge.

CASE SUMMARY
The State appeals from the trial court's order granting defendant-appellee Loretta Caplinger's (Caplinger) motion to suppress.
We affirm.

FACTS
The relevant facts show that on December 1, 1990, off-duty Lapel Police Officer Randy Busby (Officer Busby) was traveling in his personal vehicle on Pendleton Avenue in Lapel when he observed Caplinger, who was driving ahead of him, swerve and cross the center line of the roadway. Caplinger turned and headed west on State Road 32 and Officer Busby followed. He observed her swerve across the center line several times, almost striking another car head-on once, and almost drive off the right side of the road. He followed her from Madison County into Hamilton County.
Officer Busby contacted the Madison County Police Department with his cellular phone and informed them that he was following a possible drunken driver. Officer Busby was eventually connected with the Hamilton County Sheriff's Department, and while he was talking to the Hamilton County authorities, Caplinger attempted to turn into a driveway and stopped in a yard.
Officer Busby pulled into the driveway behind Caplinger, and Caplinger attempted to back out of the yard, almost striking Officer Busby's vehicle. Officer Busby exited his vehicle and approached Caplinger's car. He could smell the odor of an alcoholic beverage emanating from Caplinger's vehicle. He reached into Caplinger's car, turned off the ignition, took Caplinger's keys and identified himself as a police officer. Officer Busby was not wearing a uniform and his personal vehicle was not marked as a police vehicle.
*794 Subsequently, Hamilton County Sheriff's Deputy Bruce Knott (Knott) arrived at the scene. Knott conducted several field sobriety tests, three of which Caplinger failed, and read the implied consent law to Caplinger. Caplinger agreed to take a breathalyzer test and was taken to the Hamilton County Jail. The alco-sensor test indicated her blood alcohol content was .17%. Caplinger was charged with operating a vehicle while intoxicated.[1]
Caplinger moved to suppress the breathalyzer test and any evidence of the events that transpired after she had stopped, claiming that she had been illegally arrested by Officer Busby because she was detained in a manner which effectuated an arrest and he was not in uniform or driving a marked police vehicle as required by Ind. Code 9-4-8-1 (1988).[2] After a hearing, the trial court granted Caplinger's motion and suppressed the breathalyzer test and any testimony regarding facts observed after she was stopped.

ISSUE
Whether the trial court erred when it granted Caplinger's motion to suppress.

DECISION
PARTIES' CONTENTIONS-The State argues that Officer Busby was justified in making a brief investigative detention of Caplinger and that her subsequent arrest by Knott was therefore proper. Caplinger replies that she was arrested when Officer Busby interfered with her freedom of movement, resulting in an illegal arrest.
CONCLUSION-Officer Busby illegally arrested Caplinger.
At the time of the incident, IC 9-4-8-1 provided:
"No peace officers shall have any authority to arrest any person for any violation of any of the laws of this state regulating the use and operation of motor vehicles on the public highways of the state, or any of the ordinances of any city or town thereof, regulating the use and operation of motor vehicles on the public highways of this state, unless, at the time of such arrest, such officer is wearing a distinctive uniform and a badge of authority, or is operating a motor vehicle which is clearly marked as a police vehicle, which will clearly show him or his vehicle to casual observations to be an officer. The provisions of this section shall not be construed to apply to any officer making any such arrest when there is a uniformed officer present at the time of such arrest, nor shall such provision apply to any regular police officer of any city or town within the limits of his jurisdiction."[3]
As Officer Busby was not in uniform or driving a police vehicle on the night in question, he clearly did not have the authority to arrest Caplinger for a violation of any laws of this state regulating the use or operation of motor vehicles when she stopped in the yard. The State would have us characterize Officer Busby's actions not as a formal arrest, but rather as an "investigative detention" of Caplinger. However, the issue is not, as the State suggests, whether Officer Busby was justified in "detaining" Caplinger, but whether his "detention" of Caplinger constituted an "arrest."
*795 As Caplinger points out, our supreme court has decided that "[a]n arrest has occurred when police officers `interrupt the freedom of an accused and restrict his liberty of movement.'" Phillips v. State (1986), Ind., 492 N.E.2d 10, 17 (overruled on other grounds Moore v. State (1986), Ind., 498 N.E.2d 1), quoting Armstrong v. State (1982), Ind., 429 N.E.2d 647, 651.
An examination of the facts here compel us to conclude Caplinger was arrested by Officer Busby. At the suppression hearing Officer Busby testified that he took Caplinger's keys to prevent her from driving. Record at 118. He also testified that he identified himself as a police officer and that Caplinger was not free to leave. Record at 123. Since Officer Busby interrupted Caplinger's freedom and restricted her liberty of movement, we must conclude he had effectively arrested her. See Phillips, supra; Armstrong, supra.
Our conclusion is supported by this court's decision in State v. Whitney (1978), 176 Ind. App. 615, 377 N.E.2d 652, trans. denied. In Whitney, the State was sued by Whitney, a driver who was injured when an off-duty, nonuniformed State Police Officer attempted to arrest him for running a red light. The State claimed that it was entitled to governmental immunity and that the off-duty officer had not actually arrested Whitney, but that Whitney had been arrested by the uniformed officers who arrived later.
Citing IC 9-4-8-1, we concluded that because the off-duty officer was not in uniform or driving a marked police vehicle, he had no authority to arrest Whitney and that an arrest under those circumstances would be illegal and constitute a false arrest or false imprisonment. We decided:
"In the case at bar the evidence clearly shows that Krueger [the off-duty officer] told Whitney that he was under arrest, Krueger kept Whitney's driver's license in order to restrict Whitney's movement until a uniformed officer arrived, and Krueger even resorted to physical restraint to keep Whitney from taking his driver's license and leaving. Such conduct would be sufficient to constitute an arrest. Since such an arrest was illegal, the State is not immune from liability."
Whitney, supra at 622, 377 N.E.2d at 655.
That Officer Busby did not inform Caplinger that she was under arrest is irrelevant. As our supreme court observed in Dillon v. State (1971), 257 Ind. 412, 275 N.E.2d 312, the "[f]ailure to inform a defendant that he is `under arrest' does not in every case mean that he was not in fact placed under arrest." Id. at 417, 275 N.E.2d at 315.
Just as in Whitney, we must consider Officer Busby's "detention" of Caplinger an illegal arrest. As evidence obtained in an unlawful arrest may be excluded upon proper motion by the defendant, Pawloski v. State (1978), 269 Ind. 350, 380 N.E.2d 1230, we conclude the trial court properly granted Caplinger's motion to suppress the evidence obtained after she was stopped. See Walker v. State (1974), 261 Ind. 519, 307 N.E.2d 62.[4]
While Officer Busby's concern for the safety of other motorists is understandable and commendable, we are nonetheless constrained to affirm the trial court's decision in light of IC 9-4-8-1.
Judgment affirmed.
SHIELDS and ROBERTSON, JJ., concur.
NOTES
[1] Ind. Code 9-11-2-2 (1988), since repealed and recodified at 9-30-5-2 (1992 Supp.).
[2] IC 9-4-8-1 has since been repealed and recodified at Ind. Code 9-30-2-2 (1992 Supp.). The recodified statute contains stylistic changes and a minor substantive change not relevant to this case.
[3] IC 9-30-2-2 currently provides:

"A law enforcement officer may not arrest or issue a traffic information and summons to a person for a violation of an Indiana law regulating the use and operation of a motor vehicle on an Indiana highway or an ordinance of a city or town regulating the use and operation of a motor vehicle on an Indiana highway unless at the time of the arrest the officer is:
(1) wearing a distinctive uniform and a badge of authority; or
(2) operating a motor vehicle that is clearly marked as a police vehicle; that will clearly show the officer or the officer's vehicle to casual observations to be an officer or a police vehicle. This section does not apply to an officer making an arrest when there is a uniformed officer present at the time of the arrest."
[4] We observe that Officer Busby's testimony as to his observations prior to and contemporaneous with his arrest of Caplinger would be admissible. See Purcell v. State (1980), Ind. App., 406 N.E.2d 1255, reh'g. denied 418 N.E.2d 533, trans. denied; Kissinger v. State (1974), 161 Ind. App. 303, 315 N.E.2d 423.